MARVIN CROWDER v. CARL WOLARY.

198 So. 9

Division B

Opinion Filed August 2, 1940

Rehearing Denied October 8, 1940

G. P. *Garrett,* for Plaintiff in Error;

*Russell Snow* and *Lloyd Campbell,* for Defendant in Error.

CHAPMAN, J.—This case is before the Court on writ of error to a final judgment on demurrer for the defendant entered by the lower court. The case turns on whether or not the amended declaration states a cause of action.

The amended declaration is, viz.:

"AMENDED DECLARATION

"MARVIN CROWDER, plaintiff herein, sues CARL WOLARY, defendant herein, by this his amended declaration, and says that:

"*Count No. 1.*

"(a)   On, to-wit: January 31st, A. D. 1939, in, to-wit: Brevard County, Florida, the said Marvin Crowder, while employed by and working for Carl Wolary, and while acting within the course and scope of his said employment, was injured at a filling station in Cocoa, Florida, which was then and there being operated and managed by the said Carl Wolary, defendant herein.

"(b)   At the time and place of the said injury, the said Carl Wolary was temporarily absent from said filling station but had placed the said Marvin Crowder under the authority of one Hardy Bonner, as vice-principal of the said Carl Wolary, said Hardy Bonner having been put by Carl Wolary · in charge of said filling station during the said temporary absence of the said Carl Wolary from said filling station.

"(c)   And it was then and there the duty of Carl Wolary then and there to furnish the said Marvin Crowder with a safe place in which to work, and to leave said filling station, during his said temporary absence in the charge of a competent vice-principal, who would and could properly discharge the duties of such vice principalship, and it was then and there the further duty of the said Carl Wolary to see to it that his vice-principal, Hardy Bonner, who was acting for him in his absence, then and there acted toward the said Marvin Crowder without wilful misconduct and without neglect for his personal safety.

"(d)   Nevertheless, the said defendant, Carl Wolary, disregarding his said duties, did not then and there furnish

Marvin Crowder a safe place in which to work and did not then and there leave said filling station in the charge of a competent vice-principal, because defendant knew that Bonner was a prankster and did not then and there see to it that his said vice-principal acted toward Marvin Crowder without wilful misconduct and without neglect for his personal safety.

"(e)   The injury to plaintiff occurred as follows: While the said Marvin Crowder was then and there cleaning the grease rack in said filling station and bending his body over the said grease rack for that purpose, the said Hardy Bonner, without cause or excuse, deliberately pushed one of the air hose in use at said station in the rectum of the said Marvin Crowder and turned on the air pressure therein to the extent of approximately 175 pounds, causing said compressed air to escape from said hose into the rectum of Marvin Crowder and thereby greatly inflated with air under high pressure, the stomach and intestines of said Marvin Crowder and thereby caused a rupture of said intestines and caused him to suffer great shock, injury, physical pain and temporary and permanent physical disability.

"(f)   And the said injury to Marvin Crowder resulted from said neglect of duty on the part of the defendant, Carl Wolary, in then and there failing to furnish Marvin Crowder a safe place in which to work and in then and there leaving said filling station and the said Marvin Crowder in charge of a vice-principal who the defendant knew, or should have known, was incompetent to assume the duties of vice-principal and in then and there failing to see to it that said vice-principal then and there acted toward Marvin Crowder without wilful misconduct and without neglect for his personal safety.

"(g)   As the result of said injury, the said Marvin

Crowder has thenceforward suffered, and still suffers, great physical pain and misery, and temporary and permanent physical disability, and it became necessary because of said injury to operate upon said Marvin Crowder and because of said injury said Marvin Crowder has lost much time and work and also has been put to a great expense for hospital bills, doctor's bills, for drugs and medicines and nursing bills, and has lost divers large gains, income, wages, salary and profits and has been and still is permanently physically injured and disabled.

"WHEREFORE, plaintiff sues defendant and claims damages in the amount of $10,000.00."

It is contended that it was the legal duty of the defendant to furnish the plaintiff a safe place in which to work and to furnish him with a competent fellow employee; and that plaintiff's vice-principal, Hardy Bonner, was not only incompetent but was a prankster and known to be such by the defendant and this fact alone rendered unsafe the place where plaintiff was required to work, and that these were non-delegable duties of the defendant. Some of the authorities cited to sustain this view are, viz.: Ball v. Helmly Furn. Co., 132 Fla. 882, 182 So. 435; Crenshaw Bros. Produce Co. v. Harper, 142 Fla. 27, 194 So. 353; Tampa Shipbuilding & Eng. Co. v. Thomas, 131 Fla. 650, 179 So. 705; Sutton Bros. v. Hancock, 105 Fla. 497, 141 So. 532; Stinson v. Prevatt, 84 Fla. 416, 94 So. 656; Stearns & Culver Lbr. Co. v. Fowler, 58 Fla. 362, 50 So. 680; Euting v. Chicago N. W. RR. Co., 116 Wis. 13, 92 N. W. 353, 60 L. R. A. 159; Zawaba v. Oberbeck Bros. Mfg. Co., 146 Wis. 621, 131 N. W. 826, Ann. Cas. 1812C 419; Robinson v. Melville Mfg. Co., 165 N. C. 495, 81 S. E. 681, 52 L. R. A. (N. S.) 385. These cases and others cited in the brief of plaintiff in error have been carefully considered.

In the case of Zawaba v. Oberbeck Bros. Mfg. Co., *supra,* the court held that the question of whether or not the employee of the defendant was engaged in work within the scope of his employment at the time plaintiff was injured was for a jury to determine under appropriate instructions, while other courts hold that this question should be determined by the court as a matter of law.

The courts in recent years have decided cases involving injuries inflicted by means of compressed air devices used as a prank. These cases generally hold that the responsibility of the employer does not depend on the question of whether or not an inflicted injury was wilful and intentional or unintentional, but on the question of whether or not the employee when he did the wrong, thereby inflicting the injury, acted within the scope of his authority while prosecuting the employer's business or had stepped aside from that business and thereby committed an individual wrong. See Ferguson v. Rex Spinning Co., 196 N. C. 614, 146 S. E. 597, 62 A. L. R. 1430, and annotations at page 1433; Ballard v. Louisville & N. R. Co., 128 Ky. 826, 110 S. W. 296, 16 L. R. A. (N. S.) 1052; Galveston, H. & S. A. R. Co. v. Currie, 100 Tex. 136, 96 S. W. 1073, 10 L. R. A. (N. S.) 367.

The demurrer admitted the truth of the allegation that the plaintiff was injured while working for the defendant at the filling station and received the injury while discharging duties within the scope of his employment. Likewise it is admitted that the plaintiff was injured by the defendant's employee, but it is illogical and unreasonable to assume that the employee injured the plaintiff while acting within the scope of his employment when he deliberately pushed the air hose in use at the filling station into the rectum of the plaintiff and turned on the air, thereby in-

flating the intestines and stomach of the plaintiff. There is no legal liability of a master for the acts of his servant as to matters beyond the scope of his employment.

Labatt on Master and Servant, Vol. 2 (1904), pages 1536-41, par. 537, says:

"537. No Responsibility as to Matters Beyond the Scope of the Authority of the Superior Servant.—Whatever difference of opinion there may be as to the character of the relations which must be shown to exist between the delinquent and the injured employees, in order to affect the master with liability, it is universally agreed that the general rules of the law of agency are controlling in all cases to this extent, that, on the one hand, if the act was within the scope of such employee's authority, the master cannot escape liability on the ground that it was done in direct violation of his orders, and that on the other hand there can be no recovery, where the act or order which caused the injury was entirely outside the scope of the authority of the delinquent employee. If the act or order had no reference to the master's concerns, there is, of course, no liability on the master's part. But even if this point is determined in the plaintiff's favor, he must still fail, unless he can show that the superior servant had authority, either express or implied from the nature of his functions and the regular course of the business, to do the act or give the order alleged to be negligent.

"The ultimate and essential question is whether the vice-principal had ostensible authority to give the orders which led to the injury. Hence, if a representative capacity is bestowed upon a superior servant by general directions to obey his orders, that capacity continues, so far as the subordinate receiving those directions is concerned, until he is actually informed that the authority so given has been

withdrawn or restricted. But in cases of this class it is held that the mere belief of the injured servant that he had been directed to obey the orders of the delinquent will not be sufficient to fasten responsibility on the employer, if, as a matter of fact, no such directions had ever been given.

"In most kinds of business authority to commit acts of personal violence amounting to a battery cannot be inferred, for this reason, if for no other, that larger powers cannot be imputed to an agent than the principal himself possesses. A master, therefore, cannot ordinarily be held liable for the act of a supervising employee in beating a subordinate, even though it was for the purpose of furthering the master's business by compelling him to work. Under the maritime law a ship owner may be required to answer for a similar offense by the captain of one of his vessels, where it amounts to a misuse of his power to chastise a seaman for the maintenance of discipline, but this principle cannot be extended so as to create a liability for a wanton assault, which, as evidence shows, was not demanded by any pressing emergency and was a mere vindicting indulgence of the captain's own passions.

"Another case in which a vice-principal is deemed to be acting outside of the scope of his employment is when, merely as a personal matter, he gives a subordinate some information which proves to be erroneous, and the subordinate receives an injury in consequence of his reliance on the statement."

The allegation in the amended declaration to the effect that the defendant's employee, Hardy Bonner, was a prankster and known to the plaintiff as such is relied upon to sustain the view that the defendant was negligent in the employment thereof and retaining the said Hardy Bonner as an employee. This question has not been considered by

this court, but the weight of authority is contrary to the contention of counsel for plaintiff in error. See Labatt on Master and Servant, Vol. 2 (1904), pages 391-2, par. 177; Medlin Milling Co. v. Boutwell, 104 Tex. 87, 133 S. W. 1042, 34 L. R. A. (N. S.) 109; Western Railway of Ala. v. Milligan, 135 Ala. 205, 33 So. 438; Sullivan v. Louisville & N. R. Co., 115 Ky. 447, 74 S. W. 171; Roberts v. Southern Ry Co., 143 N. C. 176, 55 S. E. 509, 10 Ann. Cas. 375.

We have carefully considered the entire record, the briefs of counsel have been read, and the authorities cited examined, and very able argument has been heard at the bar of this Court but we fail to find error in the record.

The judgment appealed from is hereby affirmed.

WHITFIELD, P. J., and BROWN, J., concur.

TERRELL, C. J., concurs in opinion and judgment.

Justices BUFORD and THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.

### REHEARING DENIED

PER CURIAM.—On petition for rehearing it is contended that in our opinion filed herein on August 2, 1940, we overlooked and failed to consider the question of whether or not the employer employed a competent vice-principal. That question was not involved in this case because it cannot be logically contended that the injury complained of was inflicted by the vice-principal by the commission or omission or the improper performance of some act which came within the purview of his employment.

It, therefore, follows that this case is not ruled by those cases which hold that the employer may be held liable for the wrongful acts of an incompetent vice-principal.

Admittedly, it is the duty of the principal employing a vice-principal to employ one who is competent to perform the duties contemplated within the scope of his employment, but the principal is not responsible for the personal conduct of the vice-principal in matters which in nowise come within the scope of the employment.

The cases cited in our opinion, *supra,* support this legal principle.

The Alabama case of Western Railway of Ala. v. Milligan, 135 Ala. 205, 33 Sou. 438, was a much stronger case than this and there the court held:

"This whole case turns upon the question we have been considering: Whether Cunningham's alleged act of pushing or punching or touching Milligan while the latter was about to brush off the table upon which the knives were fixed was an act of superintendence. Reaching the conclusion that this was not an act of superintendence, and that of consequence the defendant was not responsible for it, our further inevitable conclusion is that the city court erred in refusing to give the affirmative charge requested by the defendant."

It, therefore, follows that the petition for rehearing should be, and is, denied.

So ordered.

TERRELL, C. J., WHITFIELD, BUFORD and CHAPMAN, J. J., concur.

Justices BROWN and THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.