Frederick A. RIMER, as father and next of kin of Frederick Todd Rimer, Deceased, Plaintiff–Appellant,

v.

CITY OF COLLEGEDALE, TENNESSEE and Carl Caylor, Defendants–Appellees.

Court of Appeals of Tennessee, Eastern Section.

Feb. 27, 1992.

Permission to Appeal Denied by Supreme Court June 22, 1992.

Jerry H. Summers and Jeffrey W. Rufolo of Summers, McCrea and Wyatt, P.C., Chattanooga, for plaintiff-appellant.

Robert H. Watson, Jr., John C. Duffy, Watson, Hollow & Reeves, Knoxville, for

defendant-appellee, City of Collegedale, Tenn.

## OPINION

McMURRAY, Judge.

The genesis of this lawsuit is a tragic collision between a vehicle driven by Carl Caylor and a motorcycle being driven by the deceased, Frederick Todd Rimer. The facts pertinent to this appeal, however, do not involve the accident but precede the accident and generally are not in dispute. After a bench trial, pursuant to the provisions of the Tennessee Governmental Tort Liability Act, the issues were found in favor of the defendant and this appeal resulted. We affirm.

## FACTS

On March 14, 1989, Mr. Robert Miller transported his daughter to Ooltewah Middle School in his personal vehicle. They were accompanied by the defendant, Carl Caylor.[1] Upon arriving at the school, Mr. Miller was recognized by William McKee, a police officer for the City of Collegedale, as the subject of an outstanding arrest warrant. Officer McKee placed Mr. Miller under arrest.

At that time a policy manual of the City of Collegedale provided at Section 467(B)(2) as follows:

> When an officer had made a physical arrest of a person driving a motor vehicle, and the vehicle is not to be impounded, these guidelines shall be adhered to:

> If the vehicle is not disabled, or is disabled but parked legally, the officer shall ask if the driver prefers to have the vehicle towed at the owner's expense. Should the driver request that a person be given custody of the vehicle, officers shall release the vehicle to that person, provided that no laws would be violated by doing so.

Officer McKee apparently was aware of the policy manual provision. He inquired

of Mr. Miller's daughter whether she possessed a driver's license. She did not. He then made the same inquiry of Carl Caylor who told him that he was a licensed driver but that his license was at home. The keys to the car were left with Mr. Miller's daughter with at least an implicit understanding that Mr. Caylor was to drive the car home. Officer McKee expressly directed Mr. Caylor not to drive the car unless he had his operator's license in hand. Under these circumstances, Officer McKee left the school.

Shortly thereafter, Mr. Caylor, in the company of Mr. Miller's daughter, drove away from the school in Mr. Miller's car. The collision between the Miller vehicle and the Rimer motorcycle occurred a short distance from the school.

Subsequent investigation revealed that Mr. Caylor was not a licensed driver and, in fact, was a very inexperienced driver. The plaintiff charges Officer McKee with negligence, imputable to the defendant city, for failure to further investigate Mr. Caylor's qualifications to drive and for negligence in entrusting the Miller car to him.

At the conclusion of all the proof in the case the trial judge issued his memorandum opinion in which he found that Officer McKee was not guilty of negligence because he had no knowledge that Mr. Caylor was an incompetent driver or reckless or unfit to drive an automobile. Judgment was entered in favor of the defendant, City of Collegedale.

## ISSUES

The plaintiff presents the following issues for our consideration:

1. Did Officer McKee, as an officer of the City of Collegedale Police Department have a duty under Tennessee Code Annotated § 55–50–301 to further investigate and ascertain whether Carl Caylor had a valid driver's license.

---

1. The defendant, Carl Caylor, was not served with process and was not before the court at the time of this trial.

2. Was it a discretionary function for Officer McKee to fail to check on Carl Caylor's alleged driver's license.

3. Was Officer McKee's negligence, in failing to ascertain the viability of Carl Caylor's driver's license, the proximate cause of Todd Rimer's death.

4. Was it reasonably foreseeable, under the theory of negligent entrustment, that leaving the car in the hands of an incompetent, unlicensed driver would lead to an accident and the subsequent death of Todd Rimer.

### STANDARD OF REVIEW

Our standard of review in this case is controlled by the provisions of Rule 13(d) of the Tennessee Rules of Appellate Procedure which provides in pertinent part as follows:

(d) Findings of Fact in Civil Actions.— Unless otherwise required by statute, review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise.

 Thus, from our *de novo* review of the record, if we are unable to determine that the evidence preponderates otherwise, we are bound to respect the findings of fact made by the trial judge. We are not, however, bound by conclusions of law.

### DISCUSSION

 As to the first issue, we have reviewed T.C.A. § 55–50–301 and observe that its provisions are the general requirements of law that all operators of motor vehicles upon the highways in this state are required to be appropriately licensed. Nothing therein, without more, requires or authorizes a police officer to investigate or ascertain whether a person has a driver's license. We, therefore, answer the first issue in the negative.

We will next observe that a failure by Officer McKee to ascertain that Carl Caylor was a licensed driver is not a determinative issue under the circumstances of this case. If material at all, it is simply a circumstance to be considered in ascertaining whether or not Officer McKee was guilty of negligence in entrusting a vehicle to an incompetent driver, be it discretionary or otherwise.

 We, like the trial judge, are of the opinion that the determinative issue is whether or not Officer McKee was guilty of negligent entrustment. Tennessee has long recognized the tort of negligent entrustment of an automobile to an incompetent driver. *V.L. Nicholson Const. Co. v. Lane*, 177 Tenn. 440, 150 S.W.2d 1069, (1941). The tort of negligent entrustment, however, requires that the person entrusting the vehicle (1) have control over the vehicle at the time it is entrusted, and (2) know or from the facts known to him should know that the person to whom the vehicle is entrusted is an incompetent driver. In 60A C.J.S. *Motor Vehicles* § 431(1), (1969), it is said that "... in order for the doctrine to apply, it is essential that the one sought to be held legally responsible have the right of control over the vehicle," and "... the liability of an owner ... is generally imposed only where the owner entrusts the vehicle to one whose appearance or conduct is such as to indicate his incompetency or inability to operate the vehicle with care, and that to impose liability in other cases, where the incompetency of the entrustee is not apparent to the entruster of the vehicle at the time of the entrustment, it must be affirmatively shown that the entruster had at that time knowledge of such facts and circumstances relating to the incompetency of the entrustee to operate the motor vehicle as would charge the entruster with knowledge of such incompetency."

In *Kennedy v. Crumley*, 51 Tenn.App. 359, 367 S.W.2d 797, (1962), the court citing 5A Am.Jur., Automobiles and Highway Traffic, Section 581 stated:

"In order to hold the owner of an automobile liable under the common-law rule charging him with liability for the negligence of an incompetent, reckless, or unfit driver to whom he entrusted his

car, *the plaintiff must establish by competent evidence that the owner had knowledge of the driver's incompetence, inexperience, or reckless tendency as an operator,* or that in the exercise of ordinary care, he should have known this from facts and circumstances *with which he was acquainted."* (Emphasis added). See also 55 ALR(4th) 1087, 74 ALR(3d) 739, and 57A Am.Jur. § 332.

 Thus, the evidence in this case, viewed in the light of the rules set out above does not preponderate against the findings of the trial judge. Firstly, the officer did not have the necessary custody and control of the vehicle to become an entruster. He was not the owner, the vehicle was not parked illegally, nor involved in the arrest or offense with which its owner was charged. *See Beckendorf v. Simmons,* 539 S.W.2d 31 (Tenn.1976). The officer, therefore, had no authority to either remove the automobile or to give custody and control to another. Secondly, there is no evidence from which it can be determined that the officer knew or should be charged with knowledge of the incompetency of Mr. Caylor.

Finally we note that even had the officer been guilty of violating the provisions of the policy manual of the City of Collegedale as set out above, such a violation would not constitute negligence or negligence *per se. See Nevill v. City of Tullahoma,* 756 S.W.2d 226 (Tenn.1988).

## CONCLUSION

We affirm the judgment of the trial court. Costs of this appeal are taxed to the appellants and this case is remanded to the trial court for the collection thereof.

GODDARD, J., concurs.

FRANKS, J., not participating.